

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed March 6, 2024

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MICHAEL JAMES SCHOUTEN, | § | Case No.: 23-20078-rlj7 |
| | § | |
| Debtor. | § | |
| ─────────────────────── | § | ─────────────────── |
| | § | |
| MICHAEL SCHOUTEN, individually and doing business as Mission Dairy, and KENT RIES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 23-02004 |
| | § | |
| GEA FARM TECHNOLOGIES, INC., GEA NORTH AMERICA, INC., PAUL MIGUEL, and MIGUEL DAIRY SERVICE AND SUPPLY, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

The Court addresses the motion of defendants GEA Farm Technologies, Inc. (GEA

Farm) and GEA North America, Inc. (GEA NA) requesting that venue of this adversary

1

proceeding be transferred to the Northern District of Illinois, Eastern Division, on the basis of forum selection clauses contained in certain agreements among the parties. They submit that the clauses are "mandatory, valid, and enforceable." ECF No. 39 at 1.[1] They argue that this action is not the "'extraordinary' or 'exceptional' case where public interest considerations 'overwhelmingly disfavor a transfer.'" *Id*. (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62, 67 (2013)).

The chapter 7 trustee, Kent Ries (Trustee), as the party-plaintiff (standing in the shoes of the debtor, Michael Schouten), opposes the transfer of venue. His position thus reflects the statutory basis for venue of proceedings that are "related to" a bankruptcy case—in the court where the bankruptcy case is pending. 28 U.S.C. § 1409. Defendants Paul Miguel and Miguel Dairy Service and Supply, Inc. (collectively, Miguel Dairy) joined the Trustee's response in opposition to the requested venue change, but then, a few days after hearing, did an about-face and advised the Court they stipulate to and are bound by the forum selection clause in a "Dealer Agreement" that places venue in state or federal court in Illinois. ECF No. 51.

There is no evidence before the Court that defendant GEA NA is covered by any forum selection clause. But it has clearly *consented* to venue before the requested Illinois District Court.

By this lawsuit, Schouten alleges that the GEA defendants and Miguel Dairy breached contracts and warranties issued and entered in connection with Schouten's purchase of an automated milking system. According to the pleadings, GEA Farm is the manufacturer of the system, and Miguel Dairy was the local dealer that sold the system to Schouten. The purchase took place in October 2017.

---

[1] "ECF No." refers to the numbered docket entry in the Court's electronic case file for Adversary No. 23-02004, unless otherwise stated.

2

I.

Schouten originally filed this suit in the 222nd Judicial District Court of Deaf Smith County, Texas. Defendants Miguel and Miguel Dairy filed separate cross-claims against the GEA defendants for statutory common law indemnity and contractual indemnity. GEA Farm filed a motion to dismiss the suit alleging a lack of jurisdiction per the forum selection clauses.[2] In April 2023, Schouten filed bankruptcy with the Court seeking to reorganize his dairy business under chapter 11 of the Bankruptcy Code. A few months later, the GEA defendants removed the suit to the United States District Court for the Northern District of Texas, Amarillo Division, which resulted in its referral here. Order, ECF No. 6. In late October 2023, Schouten, still as the debtor-in-possession under chapter 11, filed his motion for leave to amend the suit by adding two additional defendants and asserting eight additional causes of action. Within days after Schouten requested leave to amend the complaint, he moved to convert his bankruptcy case to a chapter 7 liquidation case. The Court's order approving conversion was issued on November 3, 2023; upon conversion, Kent Ries was appointed the chapter 7 trustee. And then, on December 15, 2023, the Court issued its order abating consideration of the motion for leave pending decision on the motion to transfer venue.

A.

The GEA defendants, and now Miguel Dairy, rely on forum selection clauses contained in two documents, the warranty that was issued by GEA Farm to Mission Dairy;[3] and the Dealer Agreement between, ostensibly, GEA Farm and Miguel Dairy. The warranty states that it is governed by the laws of the state of Illinois and that "[t]he parties agree to the exclusive

---

[2] GEA Farm and GEA NA also sought dismissal under Rule 91A of the Texas Rules of Civil Procedure on grounds the action has no basis in law or fact.

[3] Schouten's bankruptcy petition includes "DBA Mission Dairy" as another name used by the debtor; Schouten is the sole proprietor of Mission Dairy. Case No. 23-20078, ECF Nos. 1 and 36.

3

*jurisdiction* of the state courts in DuPage County, Illinois or the US District Court for the Northern District of Illinois, Eastern Division." ECF No. 1-2 at 55 (emphasis added). The Dealer Agreement also provides that, with some exceptions, it is governed by Illinois law; and that "each dispute between [the parties and their affiliates] … will be litigated at the trial level as a bench trial in state court in Wheaton, Illinois or in federal court in Chicago, Illinois." ECF No. 1-2 at 72 § 10.1. (Chicago is in DuPage County.)

The Dealer Agreement predates the transaction here by more than ten years. It was entered in January 2007 between WestfaliaSurge, Inc. and Miguel Dairy Service TX LLP, neither of which is a party to this adversary proceeding. At the hearing, counsel for the GEA defendants represented that WestfaliaSurge, Inc. is the predecessor to GEA, which was not disputed. Miguel Dairy's counsel said that the party to the agreement, Miguel Dairy Service TX LLP, is not the same as the defendant here, Miguel Dairy Service and Supply, Inc. But on January 15, 2024, defendant Miguel Dairy filed a notice stating, "**PLEASE TAKE FURTHER NOTICE** that Miguel Dairy **CONCEDES** and **STIPULATES** to the applicability and enforceability of the Dealer Forum Selection Clause." ECF No. 51 ¶ 6 (emphasis in original). The notice provides no explanation for Miguel Dairy's changed position.

B.

At the hearing, the parties also referred to a "purchase agreement." This so-called agreement is a document with the name "MDS" and a logo of a cow at the top; it is dated October 16, 2017 and is signed by two parties, "Miguel Dairy Service" and "Mission Dairy" (the actual signatures of the signatories are illegible). ECF No. 1-2 at 94–97. The document recites that it is a "bid" or a "quote" for purchase of the robotic milking system and says that it includes an extended warranty "for a total of 5 years on the Rotary and Robots." *Id.* at 97. GEA Farm is

4

not mentioned in this document.

C.

The Trustee advises the Court that this suit is *the* major potential asset in the case. He says he has some equipment of minimal value and few other assets. He presently has no money in the estate and reports that thirty-three claims have been filed in the case, totaling over $58 million, though he says some are duplicates.

II.

Despite what appears on the surface to be a straight-forward question of whether to transfer the venue of this adversary proceeding from Texas to Illinois, the analysis here requires the Court consider the full taxonomy of the bankruptcy system. This includes a review of bankruptcy-based jurisdiction; the basis and nature of the bankruptcy court's (or, really, the district court's) jurisdiction—whether core or non-core; the role of the bankruptcy court; the venue of a bankruptcy-related adversary proceeding; and venue transfer and thus the two statutory bases for transferring venue of a civil action or, in bankruptcy parlance, an adversary proceeding. And then, and most important, the Court addresses the effect of a forum selection clause on this bankruptcy proceeding and case.

A.

The Court, as a bankruptcy court, derives its jurisdiction from that of the District Court. *See* 28 U.S.C. §§ 1334 & 157. The district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). And it is sufficient for jurisdiction that the matter is at least "related to" the bankruptcy. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).

5

Proceedings "arise under title 11" when the cause of action is created by title 11. *In re Wood*, 825 F.2d at 96 ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11."); 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e][i] (16th 2023) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977)). A proceeding "arises in a case under title 11" when those proceedings "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002) (citation omitted). These "arising" matters are termed "core" proceedings.

The Fifth Circuit describes that "'[r]elated to' jurisdiction exists where 'the outcome of the proceeding could conceivably have an effect on the debtor's estate.'" *RDNJ Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.)*, 70 F.4th 273, 281 (5th Cir. 2023) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). The parties here agree that this proceeding creates "related to" jurisdiction. The allegations here do not implicate a right that is expressly created by title 11, the Bankruptcy Code. But the outcome of this litigation can certainly impact the bankruptcy estate; any potential recovery benefits its creditors. "Related to" matters are identified as "non-core" proceedings. The Court agrees with the parties and concludes that this lawsuit is a non-core, related-to action. The distinction between core and non-core proceedings *may* have significance in determining the correct venue-change statute that controls, either or both of §§ 1404 or 1412 of the Judicial Code.[4]

---

[4] Hereinafter, "section" or "§" refers to 28 U.S.C., the Judicial Code, unless otherwise stated.

Under 28 U.S.C. § 157(a), the District Court may provide that "any or all proceedings … related to a case under title 11 shall be referred to the bankruptcy judges for the district." As noted above, the District Court referred the action here. ECF No. 1.

B.

Section 1409 of title 28 provides the general rule that any proceeding in bankruptcy, whether one of the "arising" actions or a "related to" matter, *may* be filed with the bankruptcy court where the bankruptcy case is pending. As noted above, this is the Trustee's preferred venue. But, of course, the question here is whether the Court should transfer venue to federal court in Chicago.

Two statutory provisions, sections 1404(a) and 1412 of title 28, the Judicial Code, address venue transfers in federal court. Section 1404 applies to civil actions generally, and section 1412 specifically addresses bankruptcy proceedings. As the parties note in their pleadings, the Fifth Circuit has yet to answer which of these venue-transfer provisions apply on a motion to transfer a non-core bankruptcy proceeding. ECF No. 39 at 4 n.12. The GEA defendants look to § 1404 but plead § 1412 in the alternative and submit that, under either statute, the action against it should be transferred to the Northern District of Illinois. Schouten and now the Trustee, like the defendants, principally rely on § 1404 but address § 1412 as well.

Some courts hold that § 1404 applies to a transfer motion in a related-to proceeding. *See, e.g.*, *Multibank, Inc. v. Access Global Capital LLC*, 594 B.R. 618 (Bankr. S.D.N.Y. 2018). Other courts have concluded that § 1412 is the better choice as the bankruptcy-specific venue-transfer provision. *See, e.g.*, *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 680 (S.D. W. Va. 2005). And still other courts apply both provisions when faced with a motion to transfer. The District Court here recently *applied both provisions* to a motion to *transfer a civil action*, filed in the Northern

7

District of Texas, that *was related to* a bankruptcy case filed in the Western District of Texas. *See TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, No. 2:20-CV-069-Z, 2020 U.S. Dist. LEXIS 155812, 2020 WL 5066943, at *3 (N.D. Tex. Aug. 27, 2020). The Court follows the District Court's lead.[5]

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought *or to any district or division to which all parties have consented*." (emphasis added). The courts engage in a factor-driven analysis in assessing which venue is most convenient and which best serves the interest of justice. The factors considered for § 1404(a) are placed into two groupings—private interest factors and public interest factors.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal citations, quotations, and comments omitted). These factors are not exhaustive or exclusive, and one is not necessarily dispositive. *Id*.

Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." As with § 1404, on a transfer motion under § 1412, courts look to several factors. In determining which venue best serves the interest of justice, the courts consider the following:

---

[5] It bears mentioning that Rule 7087 of the Federal Rules of Bankruptcy Procedure specifically directs the court use § 1412 for the transfer of an adversary proceeding, without regard to whether such proceeding is a core or non-core proceeding. (But note, the elements of §§ 1404(a) and 1412 largely overlap.)

(a) economics of estate administration; (b) presumption in favor of the "home court"; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders, by those familiar with its laws; (f) enforceability of any judgment rendered; (g) plaintiff's original choice of forum.

*Walker v. Directory Distrib. Assocs. (In re Directory Distrib. Assocs.)*, 566 B.R. 869, 878 (Bankr. S.D. Tex. 2017) (Bohm, J.) (quoting *Campbell v. Williams*, No. 1:14-cv-097, 2015 U.S. Dist. LEXIS 76213, 2015 WL 3657627, at *3 (S.D. Tex. June 12, 2015)). Determining whether the transfer is for the convenience of the parties, courts consider: "(a) location of the plaintiff and defendant; (b) ease of access to necessary proof; (c) convenience of witnesses; (d) availability of subpoena power for the unwilling witnesses; (e) expense related to obtaining witnesses." *Id*.[6]

And because § 1412 is *disjunctive*, the movant need only show the transfer is either "in the interest of justice" or "for the convenience of the parties." *Id*. As an aside, the only evidence presented includes what was filed with the notice of removal—principally, the contracts containing the forum selection clauses. No evidence was formally offered on the applicable factors, other than the plaintiff's forum choice.

C.

1.

When deciding whether "a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice'" courts typically weigh relevant factors. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013). *Atlantic Marine* was a *civil action* that did not concern a bankruptcy case but did involve a forum selection clause. There, the Supreme Court reviewed a motion to transfer venue through the lens of 28 U.S.C. § 1404(a). Importantly, the elements and how they are articulated under

---

[6] The factors for determining whether a transfer is "in the interest of justice" or "for the convenience of the parties" are widely accepted. *See also Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 629 (D. Minn. 2009).

§ 1404(a) mostly match the elements of § 1412. The factor-driven analysis is greatly altered, however, when a forum selection clause is thrown in the mix. As the Supreme Court states, "[t]he calculus changes … when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine*, 571 U.S. at 63 (internal quotations omitted).

The overarching consideration is to select the venue that best serves the interest of justice. *Atl. Marine*, 571 U.S. at 63. If the parties have indeed pre-selected a venue in the event of a dispute, such selection reflects the forum they consider to be the most convenient and thus resolves the private interest factors in favor of transfer. This selection is typically made by a forum selection clause in a contract between the parties that is at the heart of their dispute. Such a provision is given "controlling weight in all but the most exceptional cases." *Id*. In *Atlantic Marine*, the Court instructs that the analysis is therefore adjusted in three ways. First, the plaintiff's choice of venue merits no consideration. *Id*. Second, the "arguments about the parties' private interests"—such as the parties' ability and cost to obtain proof, witnesses, and other "practical problems that make trial of a case easy, expeditious and inexpensive"—should not be considered. *Id*. at 64, 62 n.6 (internal citation and quotation omitted). The deciding court, therefore, "may consider arguments about public-interest factors only." *Id*. at 64. Third, when the party "flouts" the forum selection clause and files in a different forum, the transfer of venue "will not carry with it the original venue's choice-of-law rules." *Id*. at 64–65. "The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id*. at 65–66.

The bottom line is that the Court, assuming a valid and enforceable forum selection clause in this non-core proceeding, considers public-interest factors only. Unless the Court

concludes justice is best served by rejecting the choice under the forum selection clause, the Court must enforce the parties' choice and transfer this lawsuit to the District Court for the Northern District of Illinois.

2.

*Atlantic Marine* identified three public-interest factors: "the administrative difficulties flowing from court congestion"; the interest of local courts deciding local disputes; and, in a diversity case, the interest of trial before the court that is "at home with the [applicable] law." *Atl. Marine*, 571 U.S. at 62 n.6 (internal quotation and citation omitted).

The parties basically agree that the Northern District of Illinois is more congested than the Northern District of Texas. GEA defendants report that the Northern District of Illinois reports a longer median time to trial than the Northern District of Texas and more cases per judge. The Trustee obviously has no reason to dispute this. As for the second factor, the Court considers the dispute as centered in the Texas Panhandle, where Schouten's dairy is located. The sole factor that arguably favors transfer is that of having a diversity case at home with the law. But this case is not a diversity case; jurisdiction is based on the proceeding's relationship with Schouten's bankruptcy case. And this relationship is what prompted the *GEA defendants* to remove the suit to federal court. Both the warranty and the Dealer Agreement state they are controlled by Illinois law. If Illinois law ultimately proves to be the applicable law on the issues raised in this action, then this factor skews in favor of transfer. But federal courts routinely construe the laws of states other than the state where the court is located.

3.

Although the Supreme Court's decision in *Atlantic Marine* instructs the Court here, *Atlantic Marine* had cleaner, simpler facts than the Court has here. In *Atlantic Marine*, the forum

11

selection clause was contained in a contract that governed all parties and all disputes. *Atl. Marine*, 571 U.S. at 49. Here, the applicable clause is within a warranty "certificate" that covers only Schouten and GEA Farm. The forum selection clause under the Dealer Agreement does not apply to Schouten's claims. As noted, the Dealer Agreement was entered into many years prior to the deal here. There is no evidence that Schouten had any knowledge of the Dealer Agreement at the time he filed this lawsuit. That Miguel and Miguel Dairy now stipulate that they are bound by the venue choice under the Dealer Agreement represents, at most, their consent to venue in Illinois. But consent does not carry the same weight as a contractually-based forum selection clause. Consent identifies a venue where an action *may* be transferred. Under § 1404, consent to a particular venue offers an alternative to the venue where the action "*might* have been brought." 28 U.S.C. § 1404 (emphasis added).

The transaction here, from a review of the presented documents, lacks the formality that the Court would expect to see in a heavily negotiated deal where terms are vetted and doctored to the hilt. The Court has not seen a true purchase and sale agreement; the GEA defendants refer to a "contract" that states it is a "bid" and a "[q]uote" that "expires 30 days from listed date." ECF No. 1-2 at 98. It also states that it includes an "[e]xtended warranty." *Id*. And, importantly, it contains signatures for "Miguel Dairy Service" and "Mission Dairy"; neither GEA Farm nor GEA NA is mentioned. *Id*. The warranty is titled as "Certificate for Limited Warranty" and contains illegible cursive signatures for "MDS" and "Mission Dairy" on "page 4 of 5." (The document presented to the Court has no page 5.) ECF No. 1-2 at 54–57.

The clause at issue here is poorly drafted. It makes no mention of "venue"; it simply states that the parties agree to the "exclusive jurisdiction" of the Illinois courts, state or federal. The Court does not construe that Schouten "flouted" the forum selection clause by originally

filing suit in Texas state court. Issues abound in deciding where to file a lawsuit. At the time this suit was filed, there is no indication that there was any basis for federal jurisdiction. If multiple defendants are named, as here, the plaintiff must account for the need to obtain service on all parties. No discussion is had here on whether there would have been problems of *personal* jurisdiction had Schouten chosen to file the action in Illinois. Plus, Schouten's intervening bankruptcy filing allowed the GEA defendants to remove the action to federal court. The parties obviously prefer federal court to state court as no effort was made to remand it back to state court.

In short, the forum selection clause here belongs to the *fora* and fauna of a lesser order than that of the clause the Supreme Court had before it in *Atlantic Marine*.

4.

In addition to the three public interest factors identified in *Atlantic Marine*, there are other public interest factors that arise in the bankruptcy context. These include the general policy of centralizing bankruptcy proceedings and the "strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy [case] is pending." *Haigler v. Dozier (In re Dozier Fin., Inc.)*, 587 B.R. 637, 649 (Bankr. D.S.C. 2018) (quotation and citation omitted). This is not an adversary proceeding being prosecuted in a chapter 11 case after confirmation of the chapter 11 plan where courts have held that the centralization policy is "lessened." *See Manchester Inc. v. Lyle (In re Manchester, Inc.)*, 417 B.R. 377, 385 (Bankr. N.D. Tex. 2009).

This proceeding falls squarely within the policy of centralizing all proceedings in the court where the case is pending. It is a chapter 7 liquidation case with an appointed trustee who is obligated to administer the estate assets as expeditiously as possible for the benefit of creditors

13

of the bankruptcy estate. The Trustee has thirty-plus creditors with filed claims aggregating over $58 million. (The Trustee said that there is duplication of claims that would cause the total amount of claims to be around $30 million.)

As with most chapter 7 cases, the messy aspects of the case are foisted on the trustee. Lawsuits are expensive; the Trustee has no readily available funds to cover the additional expenses of a trial in Illinois. For the Trustee, trial is far simpler in Amarillo, Texas than in Chicago, Illinois. The GEA defendants recognized the primacy of the bankruptcy here by invoking it to gain federal court jurisdiction.

The public interest factors that arise in the bankruptcy context also include the "creditors' interests since the estate is often operating on limited funds and asserting actions solely to maximize the recovery to creditors." *In re Dozier Fin.*, 587 B.R. at 649 (citations omitted). The chapter 7 trustee's duties and circumstance, the associated litigation costs, and the interests of creditors of the debtor's estate all underscore the policy of maintaining all proceedings in the home court. *See id*. at 649.

## III.

In deciding whether to transfer venue of a bankruptcy-related proceeding, the Court considers as paramount the economical and efficient administration of the bankruptcy estate. *See In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). This case and this proceeding bring to the forefront the public policy and public interest factors that are critically important in bankruptcy. The Court cannot conceive of a stronger statement of public policy and public interests than Congress's enactment of "uniform Laws on the subject of [b]ankruptcies," U.S. CONST. art. I, § 8, cl. 4, in the form of the United States Bankruptcy Code and the accompanying rules and supporting statutory scheme that regulate all aspects of a bankruptcy

14

case and the variety of proceedings that can arise in a bankruptcy case. This lawsuit, though labeled a non-core proceeding, is *the* asset of the bankruptcy estate that might generate some recovery for its creditors. This goes to the heart of the administration of this case. The Court concludes that such considerations present the very set of circumstances that outweigh the deference accorded the forum selection clause at issue here. The motion to transfer venue will be denied.

### End of Memorandum Opinion ###